*D. C. Haycraft, for appellees.*

---

C. R. BURKE *v.* BARTLETT CRUTCHER ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—251.]

**Custody of Children.**

> Where after the death of his wife, leaving a daughter two weeks old, the father gives her to his late wife's mother to raise and care for and after the child has become five years of age and greatly attached to its grandparents, who are attached to it and amply able and competent financially and otherwise to give it all advantages, a court of equity does not abuse its discretion by refusing the application of the child's father for its custody after his remarriage, especially when the father does not allege his love for the child but contends that his first wife's people have said unkind things of his second wife.

**Best Interest of Child Governs As to Who Should Have Its Custody.**

A father has only a naked legal right to the custody of his child, and a court of equity is not bound to enforce such right when to do so is not for the best interest of the child and against an equity growing out of contract or springing from acquiescence and strengthened by ties of affection which the conduct of the father has permitted to grow between the child and its grandparents.

## APPEAL FROM FRANKLIN CIRCUIT COURT.

September 9, 1882.

OPINION BY JUDGE HINES:

Appellant married the daughter of appellees. She died on the 21st of March, 1874, leaving two children of the marriage, a son two years of age, and a daughter, Mary E. Burke, two weeks old. Two days after the death of Mrs. Burke appellant gave the custody of the children to their grandmother, Mary Crutcher, appellee. On the 1st day of October, 1878, appellant again married, and on the 18th of that month claimed and received custody of his son, the daughter remaining with the grandparents. This action in equity was instituted by appellant to recover possession of the daughter, who at the time of the institution of the action was five years and three months old. The court below adjudged that the child should remain in the custody of appellees until the further order of the court, and from that judgment the appeal is taken.

The defense of appellees is upon two grounds: First, that appellant agreed with appellee, Mrs. Mary Crutcher, that she should take and rear the daughter and should keep the son until he was large enough to go to school; second, that appellant had surrendered the custody of the child to appellees, and that since the surrender of the possession he had not manifested such parental affection as would entitle him to the possession of the child.

The record shows that the child is and has always been delicate, that she has been tenderly cared for by the grandparents and by her aunt, who has given her special attention, that the grandparents are of high social standing and financially able and manifestly willing to give the child the best moral and mental training, and that the child is greatly attached to the grandparents. On the other hand there is nothing in the evidence that conflicts

with the conclusion that appellant and his present wife are religious, of good social standing and financially able to rear and educate the child.

It is clearly shown by the evidence that appellant agreed that Mrs. Crutcher should take and rear the daughter "as her own," and that she and her husband have so far fully complied with the agreement, and there is no reason to doubt they will do so in the future. But whether such agreement is shown by positive evidence seems to us immaterial, since it is shown that appellant abandoned the control of the child to appellees, giving them the burden of support, until there has grown up such an attachment between the child and the grandparents that the happiness of the child would be endangered by an enforced separation.

Neither the consent of appellant nor the declaration by him of his motive in seeking the recovery of the child recommends his claim to the favorable consideration of a court of equity. His visits to the children when they were both with the grandparents were not oftener than twice a month, although he lived not exceeding ten miles from them, and after he had possession of his son he visited the daughter not more than twice in twelve months. He made no claim to the custody of the daughter for five years, and the reason then assigned was not his affection for her, nor that her interest would be forwarded, but that the "Crutcher girls had said a good many spiteful things about his present wife."

Appellant in this case has at most only a naked legal right which a court of equity ought not to enforce, contrary to the interest of the child, against an equity growing out of contract or springing from acquiescence, and strengthened by the tenderest ties of affection which the conduct of appellant has permitted to grow between the child and its grandparents.

The decree of the court below is not final as to the ultimate custody of the child. The right to revoke or modify the decree, as circumstances may require, is reserved, so that no harm can result or hardships follow either to the child or parent. Hurd on Habeas Corpus (2d ed.) 543; *Ellis v. Jesup,* 11 Bush (Ky.) 403.

Judgment *affirmed.*

*Eugene P. Moore, D. L. Thornton, for appellant.*
*Frank Chinn, for appellees.*